UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEXTER ROGERS, Individually and as Personal Representative of the ESTATE OF CARRIE BELL ROGERS and as Personal Representative of the ESTATE OF PREMIUS ROGERS, <br><br> Plaintiff, <br><br> v. <br><br> MARK BAEVERSTAD, et al., <br><br> Defendants. | CAUSE NO. 1:19-CV-327-HAB |

**OPINION AND ORDER**

Plaintiff Dexter Rogers, Individually and as Personal Representative of the Estate of Carrie Bell Rogers, and as Personal Representative of the Estate of Premius Rogers, has sued the individuals and entities he believes are responsible for depriving him of the ability to advance a 2013 medical malpractice action through the courts. He asserts that "[t]he primary cause of this action is a widespread criminal enterprise that's engaged in a pattern of racketeering activity involving numerous RICO [Racketeer Influenced and Corrupt Organizations Act] predicate acts during the past four (4) calendar years targeted directly against Plaintiff." (Amd. Verified Compl. ("Compl.") 2, ECF No. 26.) Plaintiff alleges that the purpose of the racketeering enterprise was to "willfully and maliciously inflict severe and sustained hardship upon the Plaintiff with the specific intent to deprive, impair and obstruct the Plaintiff from advancing his medical malpractice claim." (*Id.*)

The Defendants have moved for dismissal of Plaintiff's claims for lack of subject matter jurisdiction and, alternatively, for failure to state a claim upon which relief can be granted.

**COMPLAINT ALLEGATIONS**

Plaintiff alleges that all the attorneys (Mark Baeverstad, Jason Scheele), state court judges or magistrates (Craig Bobay, Nancy Eschoff Boyer, Phillip Houk), Indiana Court of Appeals Judges (John G. Baker, Terry A. Crone, John Sharpnack, Rudolph R. Pyle, Nancy Vaidek), Indiana Supreme Court Justices (Loretta H. Rush, Robert D. Rucker, Stephen H. David, Mark Massa, Geoffrey G. Slaughter), and administrative personnel (Marry Willis) who had any involvement in the medical malpractice litigation that he pursued after his mother's death were part of a "syndicate" that Baeverstad "formed . . . for the sole purpose of stripping the Plaintiff of his rights to due process." (Compl. 6; *see also id.* 50 (alleging that Baeverstad formed "a racketeering ring to commit whatever necessary acts, predicate or otherwise, to ensure the foreseeable dismissal of the Plaintiff's medical malpractice claim . . . involving the death of his mother").) Plaintiff alleges that Defendant Michael J. Packnett, as the CEO of Parkview was a "benefactor" of the Defendants' "racketeering conduct to ensure the white privileged CEO was protected and not deposed" in connection with the malpractice action. (Pl.'s Br. 10, ECF No. 19.)

Plaintiff alleges that Judge Boyer committed a predicate act when she took a bribe from Baeverstad, with the assistance of Scheele, which resulted in obstruction of justice in connection with a discovery dispute. (Compl. 6–13.) He alleges that the Court of

Appeals judges, Baker, Crone, and Sharpnack, also accepted a bribe from Baeverstad, "created phantom orders," and did not consider his briefs but, instead, accepted the "racist and bigoted rhetoric" of Baeverstad. (*Id.* 13–22.) According to Plaintiff's complaint allegations, his appeal of the Court of Appeals decision was not successful because the justices of the Indiana Supreme Court were complicit in the scheme to deny him due process. (*Id.* 23–27.)

Plaintiff alleges that Judge Bobay, who Plaintiff attempted to have recused from the medical malpractice case, accepted "a bribe from Baeverstead to resort to whatever means necessary to preside over the Plaintiff's claim and ultimately dismiss it." (*Id.* 28.) Judge Bobay, in turn, extended a bribe to Willis so that she would not accept Plaintiff's filing with the Indiana Supreme Court and Judge Bobay could remain presiding over the case. (*Id.* 29–45.) According to Plaintiff, Judge Bobay committed a fraud upon the court, which entitles Plaintiff to relief under Federal Rule of Civil Procedure 60(b). (*Id.* 49 (arguing that "any and all decisions rendered by Judge Bobay must be vacated" and Plaintiff "awarded a default judgment").)

Plaintiff's allegations against Magistrate Judge Houk pertain to Plaintiff's role as the executor of the Estate of Premius Rogers. Plaintiff alleges that Magistrate Judge Houk committed "perjury" in court and wrongfully attempted to remove Plaintiff as executor. (Compl. 75–81.)

## ANALYSIS

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998). When a district court rules upon an issue of subject matter jurisdiction, it must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs. *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993).

The *Rooker-Feldman* doctrine prevents a lower federal court from exercising jurisdiction over cases that challenge the outcome of a state court proceeding. *See Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Federal courts lack jurisdiction over such claims because "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The federal court should ask "whether the federal plaintiff is alleging that his injury was caused by the state-court judgment." *Mains*, 852 F.3d at 675 (citing *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014)). *Rooker-Feldman* does not apply unless there is "no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Id.*

> *Rooker-Feldman* thus applies where the plaintiff seeks relief that is tantamount to vacating the state judgment. *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2004). But if the suit does not seek to vacate the judgment of the state court and instead seeks damages for independently unlawful conduct, it is not barred by *Rooker-Feldman*.

*Id.*

Plaintiff argues that his lawsuit is not an attempt to have the state court rulings reversed in his medical malpractice claim. (Pl.'s Brief 3, ECF No. 29.) Rather, "[h]e wants the Defendants punished for their collective conduct in acting in the absence of all jurisdiction by way of the Civil RICO claim filed July 30, 2019." (*Id.*)

Plaintiff's claims, as set forth in his 92-page Complaint, appear to fall into two categories. Plaintiff has asserted that lawyers and members of the state judiciary at all levels of review offered or accepted bribes as part of a racketeering enterprise formed for the purpose of depriving Plaintiff of his right to pursue a medical malpractice claim. He also asserts that misrepresentations and fraud occurred during the state court proceedings, which amounted to a fraud upon the court. The Court addresses the fraud allegations first.

Despite Plaintiff's claim that he does not seek to reverse the state court rulings, on more than one occasion in his Complaint, Plaintiff requests that the decisions and orders of the state court be vacated or voided. (Compl. 48–49, 84, 86.) That is precisely what *Rooker-Feldman* prohibits, regardless of the reason for the request. *See Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015) ("The *Rooker–Feldman* doctrine is concerned not with *why* a state court's judgment might be mistaken (fraud is one such reason; there are many others) but with *which federal court* is authorized to intervene."). If the Court here "were to delve into the question whether fraud tainted the state court's judgment, the only relief

5

[it] could give would be to vacate that judgment." *Mains*, 852 F.3d at 676.[1] Plaintiff's fraud claims put the propriety of the state court judgment directly at issue. Accordingly, Plaintiff's allegations that fraud committed during the course of the medical malpractice claim negatively impacted the outcome of the case are beyond this Court's jurisdiction to consider.

It is possible for some claims to be barred by the *Rooker-Feldman* doctrine, while other claims would not be barred for an injury independent of the state-court judgment that the state court failed to remedy. Accordingly, the Court considers whether Plaintiff's Complaint presents any such claims and, specifically, whether Plaintiff's allegations of a civil RICO violation resulted in an extrajudicial injury for which he can recover. *See Iqbal*, 780 F.3d at 730; *see also Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008) (considering whether plaintiff alleged "prior, independent injuries" for violations of the Fair Debt Collection Practice Act were outside the *Rooker-Feldman* bar).

The civil RICO statute, 18 U.S.C. § 1964(c), provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." § 1964(c). The phrase "injured in his business or property" has been interpreted as a standing requirement—rather than an element of the cause of action—which must be satisfied to

---

[1] For the most part, Plaintiff's factual allegations do not refer to fraud committed on the court, but to fraud he alleges was committed by the court through its judicial officers. These allegations directly challenge the findings, conclusions, orders, and decisions made throughout the course of the state court proceedings. This is not a proper forum for such challenges.

prevail on a RICO claim. *Evans v. City of Chi.*, 434 F.3d 916, 924 (7th Cir. 2006), overruled on other grounds (citing *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 958–59 (7th Cir. 1996); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Whether a particular interest amounts to property is a question of state law, which creates and defines the dimensions of property interests. *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992).

An injury can only be characterized as an injury to property if it involved a concrete financial loss. The phrase "business or property" carries "restrictive significance." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).[2] Thus, as a basic rule, injury to business or property "requires proof of a concrete financial loss and not merely injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (8th Cir. 1994)); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual*, quantifiable injury." (emphasis in original)); *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir. 2004) ("[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." (quoting *Steele*, 36 F.3d at 70)); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (noting that RICO does not protect an "intangible property interest"); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *In re*

---

[2] *Reiter* construed that phrase in the context of § 4 of the Clayton Act. However, the Supreme Court has "repeatedly observed . . . that Congress modeled [RICO's] § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act." *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 267 (1992).

7

*Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.*, 155 F. Supp.2d 1069, 1090 (S.D. Ind. 2001) ("Federal courts have consistently and repeatedly held that to satisfy the injury requirement of section 1964, a plaintiff must prove an actual, concrete, monetary loss.").

Plaintiff alleges that the requisite injury to property was the injury to his medical malpractice claim. (Compl. 51.) But Plaintiff cannot claim a concrete, financial loss related to the medical malpractice claim unless the results of the state court proceedings are first undone and judgment is awarded in his favor. Plaintiff's malpractice claim could be described as a "chose in action," which is a "personal right not reduced into possession but recoverable by suit in law." *Neffle v. Neffle*, 483 N.E.2d 767, 771 (Ind. Ct. App. 1985) (citing *McNevin v. McNevin,* 447 N.E.2d 611 (Ind. Ct. App. 1983)). A chose in action is a proprietary right in personam and, "in its broadest sense encompasses all rights of action whether they sound in contract or tort." *Id.* However, an "unliquidated tort claim has no present ascertainable value" and any "attempt at valuation would be based upon pure speculation." *McNevin*, 447 N.E.2d at 618; *see also Nefle*, 483 N.E.2d at 772 (noting that a chose in action is not capable of division, due to its "contingent and speculative nature"). Even if Plaintiff had a right to bring his "action to trial in an attempt to recover damages," it was not a "present, tangible pecuniary interest." *Id.* Accordingly, any injury to the litigation was not an actual, concrete, monetary loss.

Plaintiff has not alleged any actions that caused injuries other than those that he claims impacted the court process or the outcome of his state court litigation. The very purpose of the alleged racketeering activity, according to Plaintiff, was the dismissal of his state court medical malpractice claim. (*See, e.g.*, Compl. 2 (enterprise was formed to

8

deprive and obstruct Plaintiff from advancing his medical malpractice claim; *id.* 6 ("syndicate formed . . . for the sole purpose of stripping the Plaintiff of his rights to due process"); *id.* 50 ("racketeering ring" formed to "ensure the foreseeable dismissal of the Plaintiff's medical malpractice claim"); *id.* 84 ("Ever since the Plaintiff filed his June 25, 2013 [lawsuit] the presiding officers of the Court have aggregately engaged in racketeering activity to strip the Plaintiff of his rights to due process stemming from a plethora of predicate acts they've collectively engaged in to dismiss the Plaintiff's medical malpractice claim.").)

Plaintiff's chose in action, with no present ascertainable value, is not the kind of property that RICO was intended to protect. Plaintiff does not have standing to assert a RICO claim for a purported loss that is contingent on the outcome of separate litigation. Any attempt to argue to this Court that the medical malpractice claim has concrete value is foreclosed by *Rooker-Feldman*. The Court could not conclude that Plaintiff suffered injury to property unless it also found that Defendants' illegal actions resulted in the erroneous dismissal of his medical malpractice claim. In other words, there is "no way for the injury" Plaintiff complains of "to be separated from the state court judgment." *Mains*, 852 F.3d at 675.

Accordingly, this case must be dismissed without prejudice for lack of jurisdiction. Because the Court lacks jurisdiction, it does not reach Defendants' alternative arguments that Plaintiff's claims are legally deficient and should be dismissed under Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, the Plaintiff's Complaint [ECF No. 26] is DISMISSED for lack of subject matter jurisdiction. Defendants' Motions to Dismiss [ECF Nos. 11, 21 & 28] are termed as pending motions. Plaintiff's Motion to Show Cause [ECF No. 32] is termed as moot.

SO ORDERED on November 14, 2019.

    s/ *Holly A. Brady*
    JUDGE HOLLY A. BRADY
    UNITED STATES DISTRICT COURT